**UNITED STATES of America, Appellee,**

v.

**Larry Winfred SHILLING, Appellant (Two Cases).**

Nos. 85–5055, 85–5056.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1987.

Decided Aug. 26, 1987.

Thomas J. Bondurant, Jr., Asst. U.S. Atty., Roanoke, Va., for the U.S.

Larry Winfred Shilling, pro se; William B. Moffitt, Thomas Rawles Jones, Jr., Lisa Bondareff Kemler (Moffitt & Jones, on brief), John A. Keats, William F. Krebs, (Keats, Krebs & Leckey, Alexandria, Va., on brief), for appellant.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.

PER CURIAM:

These two cases present appeals on a range of issues from criminal proceedings against the appellant in the Western District of Virginia. In No. 85–5055 the appellant, Larry Shilling, was indicted on 16 counts, alleging (1) possession with intent to distribute methamphetamine and marijuana in violation of 21 U.S.C. § 841(a)(1); (2) possession of unregistered firearms in violation of 26 U.S.C. §§ 5861(d) and 5871; and (3) possession of untaxed liquor in violation of 26 U.S.C. § 5604(a)(1). Counts 1 and 2 of this Indictment were later dismissed without prejudice, dropping the charges of possession with intent to distribute. The appellant was later convicted of 13 of the remaining 14 counts, most of which concerned possession of automatic weapons.

The second case, No. 85–5056, concerns a subsequent four count Indictment charging the making of false income tax returns, in violation of 26 U.S.C. § 7201 and perjury in violation of 26 U.S.C. § 7206(1). After Shilling's conviction on the first case, he pled guilty to Counts 1 and 3 of the second

Indictment. These counts concerned the making of false tax returns. Counts 2 and 4, which charged perjury, were dismissed.

Shilling was sentenced to a total of 15 years in custody and Fifteen Thousand Dollars ($15,000.00) in fines on the firearms case, and to eight years custody with a Ten Thousand Dollars ($10,000.00) fine on the tax return case, said custodial sentence running concurrently with the firearms sentence.

There are three primary *foci* of appellant's arguments. First, he contends that certain of the weapons in the firearms case were not automatic firearms within the meaning of the statute. Alternatively, he contends that it was necessary for the government to prove that he knew that the guns in question had been converted to automatic firing. Second, he contends that he was denied effective assistance of counsel because his first attorney, David Nichols, who was himself a target of the grand jury investigating Shilling for tax violations, testified before the grand jury without advising Shilling that he was going to do so. Third, Shilling contends that the search warrant on which the search of his residence was based was so broad as to constitute a general warrant, or alternatively, that the execution of the search was so uncontrolled as to amount to a general search, in violation of his Fourth Amendment rights.

We address the three areas of Shilling's appeal *seriatim:*

*(1) Shilling's Claim That Weapons Were Not Automatic Firearms Or, Alternatively, That the Prosecution Should Have Been Required To Prove That Shilling Knew the Weapons in Question Were Automatic.*

■ Fifty guns were seized from Shilling's house and garage, of which 13 were the basis for Firearms Act violations under 26 U.S.C. § 5801 *et seq.*, because Shilling had not registered these firearms. Ten of the firearms were machine guns; one was a pen gun; one was a silencer; and one was a short-barrel rifle. All of the machine guns were originally legal semi-automatic rifles that had been altered to fire as automatic rifles. We conclude that there is ample evidence to support the categorization of each of the weapons concerned as a firearm within the meaning of the Act.

■ A more interesting issue here is Shilling's contention that the prosecution should be required to prove that a defendant had specific knowledge of the automatic firing capability of a weapon in a prosecution under the Firearms Act. Shilling correctly contends that the "machine guns" he possessed were originally only semi-automatic rifles, and that they were converted to automatic firing through trigger manipulation and assembling components by the Government's experts. Shilling contends that because there were no obvious external modifications to these guns, he should be considered to be ignorant of their automatic firing capability unless the Government proves otherwise. He also urges that the Government's assembly of gun components which Shilling had at different locations within his house is an impermissible means of showing that he possessed automatic firearms. As for the contention concerning disassembled guns, we find no merit to Shilling's position. Disassembled guns that were "readily restorable" have been found to come under the Firearms Act by other Circuits. *United States v. Lauchli,* 371 F.2d 303 (7th Cir. 1966); *United States v. Woods,* 560 F.2d 660 (5th Cir.1977); *United States v. Smith,* 477 F.2d 399 (8th Cir.1973).

■ We also reject Shilling's contention that the Government should be required to prove that a defendant knew a particular weapon was automatic. Shilling relies primarily on *United States v. Herbert,* 698 F.2d 981 (9th Cir.1983). The *Herbert* opinion was concerned with weapons that were only internally modified and still appeared to be semi-automatic weapons externally. In such a case, the Ninth Circuit Court of Appeals required the Government to prove that the defendant knew of the automatic nature of the firearm. Even so, the court affirmed the conviction of one of the defendants because of overwhelming evidence that he knew that the guns were

automatic. It reversed the co-defendant's conviction because the only evidence as to him regarded the transportation of the firearms. In this case, there is substantial circumstantial evidence that Shilling knew the weapons were converted. Moreover, we decline to follow the *Herbert* decision in this Circuit. We find a better rule to be provided by *Morgan v. United States,* 564 F.2d 803 (8th Cir.1977), which rejected an appellant's contention that the Government must prove actual knowledge of a weapon's physical properties. In *Morgan,* the Eighth Circuit Court of Appeals held as follows:

> Sufficient intent is established if the defendant is shown to have possessed an item "which he knew to be a firearm within the general meaning of the term."

564 F.2d at 805. We note that a similar approach was adopted in *United States v. Decker,* 292 F.2d 89 (6th Cir.1961), and in *United States v. Gonzalez,* 719 F.2d 1516 (11th Cir.1983).

■ Related claims by Shilling urge that the evidence was insufficient to support his convictions for possession of a short barrel rifle (Count 5); a .45 calibre machine gun (Count 11) and the sets of parts designed for use in converting a weapon into a machine gun (Counts 14 and 15). These claims generally focus on the component part issue noted above, except for the machine gun in Count 11. Shilling claims the Count 11 machine gun was owned by an associate, Alexander Garrison, who was at Shilling's house on the night of the raid. The Count 11 machine gun was found in Shilling's garage, the same location as Shilling's Uzi rifle. There was substantial circumstantial evidence that Shilling used straw purchasers like Garrison to sign on the purchase forms for guns that Shilling himself obtained. It was within the jury's province to determine whether the Count 11 machine gun belonged to Shilling. We find no reason to disturb the jury's decision on that point.

*(2) Shilling's Claim That a Conflict of Interest With His Original Counsel Denied Him the Effective Assistance of Counsel.*

Shilling claims that when Attorney David Nichols testified before the grand jury pertaining to the false tax return charges, Nichols and Shilling's other attorney, Jack Kennett, were placed in conflict with Shilling's own interests. Shilling claims that the indictment for income tax violations should be dismissed because he did not have conflict-free counsel representing him. He also contends that Nichols revealed confidential communications from Shilling to the grand jury. These issues were raised below, and the trial court found that Nichols had not revealed any confidential communications and that Shilling had not been affected by the alleged conflict.

■ Nichols' testimony preceded Shilling's Indictment on tax charges. After Shilling's indictment in July 1984, on tax charges, the Government advised Nichols that it would move to disqualify him should he represent Shilling on the tax charges. Shilling then obtained new counsel for all of his pending charges. The central problem with Shilling's claim of ineffective assistance of counsel is that he makes no showing here that the alleged conflict had an adverse impact on the quality of legal representation given him before the grand jury. For a successful Sixth Amendment claim, Shilling must show such an adverse impact. *See, Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

■ Shilling does not argue that any particular statements made by Nichols were privileged, but rather he claims that there should be a presumption of privileged communication. We reject this claim. Under *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982), Shilling must demonstrate the privilege's applicability. Moreover, "it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality." *In Re Grand Jury Proceeding,* 727 F.2d 1352, 1356 (4th Cir.1984). The district court reviewed the transcript of Nichols' testimony and found no privileged commu-

nications were revealed. Shilling has given no good reason to reverse that view.

*(3) Shilling's Claim That the Warrant that Authorized the Search of His Residence Was an Invalid General Warrant, or Alternatively That the Method of Executing the Warrant Amounted to a General Search.*

There is no question that, to be valid, the search warrant obtained for the search of Shilling's residence must have sufficiently described the items to be seized. This search was the occasion on which the firearms, illegal liquor, records for the tax prosecution, and other items were seized.

 We have previously recognized that the specificity required for a warrant varies with the circumstances within a "practical margin of flexibility." *United States v. Torch,* 609 F.2d 1088, 1090 (4th Cir.1979). Here, the warrant was issued by a Magistrate and contains a two-page list of items for the search. Although the warrant uses generic terms (such as books, records, bank statements, etc.) without detailed descriptions, we consider this to be acceptable, since the Government could hardly have known in detail what precise business records were maintained by the defendant. Likewise, there is no flaw in the fact that the documents covered by the warrant did not have specific time periods attached. The dates of specific documents could not have been known to the Government, and, as for income tax violations, documents from an earlier time may have bearing on the tax violations alleged in a later year. *See, United States v. Espinoza,* 641 F.2d 153 (4th Cir.1981).

 The most troublesome aspect of Shilling's appeal derives from the execution of the search. The Government itself notes that "the warrant here was perfectly executed except for the seizure of documents." The Government admits that because of the volume of the documents and the desire to keep them intact and prevent loss, IRS agents seized some documents outside the warrant. In fact, the IRS agents removed entire file cabinets from the house. IRS Special Agent Higgenbotham testified as follows:

Well, it wasn't really a search. It wasn't really a search. We reviewed the documents in the file cabinet and realized there were so many documents that we could not go through them. So we decided to keep them in one place, and that is when we decided to take the whole cabinet.

Some courts have found that practical considerations justify the seizure of entire file cabinets. *See, United States v. Taumra,* 694 F.2d 591 (9th Cir.1982). Here, it is clear that substantial practical problems were presented by the task of examining the mass of Shilling's records. While the Government's desire to keep the records intact may have real merit, we cannot easily condone the wholesale removal of filing cabinets and documents not covered by the warrant. In expressing our concern over this procedure, we quote from a portion of the Ninth Circuit's decision in *Tamura:*

> In the comparatively rare instances where documents are so intermingled that they cannot feasibly be sorted on sight, we suggest that the Government and law enforcement officials generally can avoid violating fourth Amendment rights by sealing and holding the documents pending approval by a magistrate of a further search....

694 F.2d at 595–96.

We recognize the questionable propriety of the IRS agents' seizure of documents not covered by the warrant, as did the court below in its Order denying Shilling's suppression motion. Even so, it must be emphasized that the documents which pertained to the counts on which Shilling pled guilty had been lawfully seized, since they had been described in what we have found to be a valid search warrant. The exclusionary rule does not compel suppression of evidence properly covered by a warrant merely because other material not covered by the warrant was taken during the same search, especially where, as in this case, such other materials were not received into evidence against the defendant. *See Tamura,* 694 F.2d at 597; *United States v. Daniels,* 549 F.2d 665, 668 (9th Cir.1977). Because we conclude that the overbroad

seizure of records here was prompted by legitimate practical concerns, rather than by an intent to engage in a fishing expedition through Shilling's papers, we reject Shilling's claim that the documents seized should be suppressed.

For the reasons noted herein, the judgments of conviction in each of these cases are hereby

AFFIRMED.