**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joe Alvin ANDERSON,**
**Defendant–Appellant.**

**No. 87–2905.**

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1988.

Thomas D. Moran, Stanley G. Schneider, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Frances H. Stacy, Don Degabrielle, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Joe Alvin Anderson (Anderson) appeals his conviction of three firearm offenses under 26 U.S.C. § 5861(d). Anderson raises three complaints on his appeal, namely, that his motion to suppress the fruits of the search of his residence should have been granted, that the district court erred in its jury instructions on knowledge, and that the evidence is insufficient to support his conviction on any of the three counts. We reject these contentions and accordingly affirm.

### Facts and Proceedings Below

On October 27, 1986, several law enforcement officers from various agencies entered Anderson's residence at 1902 Crosby–Dayton Road in Harris County, Texas, pursuant to a search warrant.[1] During the

---

**1.** A second search warrant had been issued for Anderson's place of business, "Joe's Salvage Yard," which was located next to Anderson's residence at 1902 Crosby–Dayton Road.

search, an agent found a .38 caliber "machine pistol" underneath a bed. When asked whether he owned the pistol, Anderson admitted that he did. Subsequently, the agents learned that there was a vault in Anderson's house. Confronted with this information, Anderson disclosed the existence of a hidden vault behind a bookcase hinged over a false wall in the room that he used for loading ammunition. This vault contained numerous weapons. Among these weapons were a .45 caliber pistol, a silencer, and a "homemade booby trap device." Also in this vault were two boxes of spent ammunition casings and manuals giving step-by-step instructions for the conversion of semiautomatic pistols into fully automatic ones and describing the fabrication of silencers.

The .45 caliber pistol was, by design and manufacture, semiautomatic and "blowback operated or recoil operated," meaning that it would fire one round by a single depression of the trigger and was fed by a magazine cartridge with multiple round capacity. The pistol had been modified, after manufacture, by cutting its "disconnecter" to permit the firing of multiple shots by a single depression of the trigger. As a result of this modification, the pistol was fully automatic and could fire at a cyclic rate of approximately one thousand rounds per minute. In layman's terms, this pistol was an "M-10." The .38 caliber pistol was essentially a smaller version of the .45 caliber pistol. Although the .38 caliber pistol was also a semiautomatic pistol by design and manufacture, it too had been modified after manufacture. The modification in this instance consisted of cutting, grinding, or polishing a "strip" magazine to convert the weapon from semiautomatic to fully automatic operation. This pistol, as so modified, also had a cyclic rate of fire of approximately one thousand rounds per minute. The silencer was the rear portion of a siotic-type silencer and was designed to fit an M-10, .45 caliber pistol. Also recovered were components used in the front portion of such a silencer. None of these weapons was registered in Anderson's name in the National Firearms Registration and Transfer Record.

On May 1, 1987, an indictment was filed in the United States District Court for the Southern District of Texas charging Anderson with four counts—one each for the .45 caliber pistol, the .38 caliber pistol, the silencer, and the "booby trap"—of unlawful possession of firearms not registered in the National Firearms Registration and Transfer Record contrary to 26 U.S.C. § 5861(d). Anderson pleaded not guilty. He also filed a motion to suppress evidence on the ground that the search of his residence was conducted pursuant to a search warrant issued without probable cause. The district court held a pretrial hearing on this motion. After hearing the testimony of a detective with the Harris County, Texas Sheriff's Department, who was the affiant on the affidavit that accompanied the request for the search warrant, the district court determined that there was probable cause to support the issuance of the search warrant and denied Anderson's motion to suppress.

Anderson was thereafter tried before a jury. Anderson unsuccessfully objected to those portions of the court's jury charge concerning the knowledge on his part that the government was required to establish in order to convict him. The jury found Anderson guilty of the counts involving the two pistols and the silencer, but not guilty of the "booby trap" count. Anderson was sentenced to three concurrent ten-year terms, with execution of the sentence suspended during a five-year period of supervised probation. The district court also imposed a special assessment of $50 on each count for a total of $150. This appeal followed.

## Discussion

*Search warrant*

■ The first issue is whether the district court erred in determining there was probable cause to support the search warrant for Anderson's residence at 1902 Crosby–Dayton Road. Our review of the district court's determination of the correctness of the magistrate's decision that the affidavit adequately established probable

cause is made without deference to the district court's ruling. *See United States v. Phillips,* 727 F.2d 392, 394–95 (5th Cir. 1984); *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir.1982). However, in determining whether the magistrate correctly decided this issue, we refrain from any sort of *de novo* review and instead accord "great deference" to the magistrate's decision. *See United States v. Jackson,* 818 F.2d 345, 348 (5th Cir.1987); *Phillips,* 727 F.2d at 395; *Freeman,* 685 F.2d at 948. As a result, our task is simply to determine "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2085, 80 L.Ed.2d 721 (1984) (per curiam); *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). We review the warrant challenged here in light of these principles.

In challenging the existence of probable cause to support the search warrant for his residence, Anderson does not question the "basis of knowledge" of any informant supplying hearsay information, nor does he dispute the "veracity" of any such informant. *See Gates,* 103 S.Ct. at 2332. Rather, his sole contention is that the affidavit failed to establish a sufficient nexus between his residence and the evidence of crime that the law enforcement agents sought. We disagree.

Although the affidavit discussed Anderson's place of business at 1900 Crosby–Dayton Road as well as his residence at 1902 Crosby–Dayton Road, which was adjacent to the place of business, there is nothing in the affidavit that supports Anderson's argument that the affidavit tended to confine the described likely criminal activity to the business establishment and did not implicate the residence in or otherwise tie it to the criminal activity. Although some of the statements in the affidavit referred to the site of the alleged criminal activity (here, the manufacture of methamphetamine) as a salvage yard, there is nothing in the affidavit that suggests that the salvage yard did not also include the residence. On the contrary, at least one passage in the affidavit makes it clear

that there were numerous pieces of salvage on the premises of Anderson's residence, strongly suggesting that in fact the salvage yard was not confined solely to the business premises at 1900 Crosby–Dayton Road, but also included the residence at 1902 Crosby–Dayton Road. Additionally, there are other statements in the affidavit that directly tie the residence to the criminal activity for which a warrant was sought. For instance, the affiant stated that he had personally observed a person who was known to him as a "methamphetamine cook" drive into the driveway nearest the residence and walk to the rear of the residence. Further, the affidavit set forth facts showing that Anderson's residence and business establishment were immediately adjacent properties, that they were under the control of the same person or persons, and that there was no distinct physical or functional separation between them. Considering all of these matters together, we conclude that the affidavit established a sufficient nexus between Anderson's residence and the evidence sought to support the issuance of a search warrant, and that under the totality of the circumstances reflected by the affidavit the magistrate could properly determine that there was a fair probability that evidence of the mentioned criminal activity would be found in the residence.

In a case presenting facts less compelling than those involved here, we found that there was substantial evidence to support the magistrate's determination that probable cause existed to support the issuance of a search warrant. *See United States v. McKinney,* 758 F.2d 1036, 1043–44 (5th Cir.1985) (holding that there was a sufficient nexus between the items sought —bomb paraphernalia—and the place to be searched—a mine in Colorado that was owned by defendant—to satisfy the test of probable cause where the affidavit established that defendant was involved in an extortion plot, that this scheme was centered in Colorado, that some components of the bombs used in the plot had been purchased in Colorado, that defendant supplied the explosive devices used to manufacture

the bombs, and that the mine contained structures suitable for the storage of explosive devices).

We therefore hold that the district court did not err in determining that the magistrate could properly conclude that there was probable cause to support the issuance of the search warrant respecting Anderson's residence.

*Jury instructions on knowledge*

■ The second issue Anderson raises is whether the district court erroneously instructed the jury on the mental state required to support a conviction under 26 U.S.C. § 5861(d). Anderson argues, citing *United States v. Herbert*, 698 F.2d 981 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983), that at least in a situation such as the present where the guns that the defendant possessed did not have any patent markings or other external sign indicating they were automatic rather than semiautomatic, as they appeared to be, the government should be required to prove that the defendant had knowledge of the weapon's physical characteristics, specifically that they were automatic rather than semiautomatic, which rendered them firearms under the statute. *See id.* at 986–87. Accordingly, the argument goes, the district court erred when it only required the government to establish that Anderson knowingly possessed items that he knew were firearms within the general meaning of the term. Semiautomatic pistols (with rifled bores) are, of course, clearly firearms within the general meaning of that term, and, just as clearly, they are not a "firearm" for purposes of section 5861(d).[2] The government disputes this argument and, citing this Court's opinion in *United States v. Vasquez*, 476 F.2d 730 (5th Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed. 2d 72 (1973), argues that the only knowledge that the government needed to establish was knowledge on the part of Anderson that the items he possessed were

firearms within the general meaning of the term. *See id.* at 732.

If this were a case of first impression in this Circuit, we might well be inclined to adopt the position taken by the Ninth Circuit in *Herbert*. Our reasons are several. First, the principal case relied on by the *Vasquez* panel, *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), does not really resolve the issues presented in cases like *Vasquez* and the present. In *Freed*, the objects that defendants were charged with possessing in violation of 26 U.S.C. § 5861(d) were hand grenades, which are specifically defined as "firearms" under the National Firearms Act (the Act). *See* 26 U.S.C. §§ 5845(a)(8), 5845(f)(1)(B). In holding that the government was not required to prove specific intent or knowledge on the part of the defendants that the hand grenades were unregistered, the Court reasoned in part that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Freed*, 91 S.Ct. at 1118. *See also id.* at n. 2 ("An agreement to acquire hand grenades is hardly an agreement innocent in itself."). However, in cases where the items possessed are to all outward appearances items that are generally possessed legally (without registration under the Act), such as the guns involved in *Vasquez* and the present case, this logic does not apply: one generally *would* be surprised to learn that possession of what is apparently a legal device is not an innocent act. Possession of a conventional semiautomatic pistol *is* generally "an innocent act."

Moreover, as Justice Brennan's concurrence in *Freed* makes plain, the Court there did not hold that the government need not prove that the defendant knew that what he possessed was a hand grenade; it assumed the government did have to prove that, and the government did not dispute that burden. All *Freed* held was that the

---

**2.** Section 5861(d) provides that "[i]t shall be unlawful for any person— ... (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or (e)...." The definition of "firearm" for these purposes is contained in 26

U.S.C. § 5845. Under section 5845, pistols (with rifled bores) which have not been made from shotguns or rifles are not firearms unless they are fully automatic so as to meet the definition (in section 5845(b)) of a "machinegun."

government need not prove that the defendant knew the particular hand grenade was *unregistered*.[3] The *only* significance, under the Act, of an item being a hand grenade is simply that this constitutes it a "firearm" which must be registered. So, to require—as *Freed* implicitly does—that the defendant know that what he possesses is a hand grenade is merely to require that the defendant know that what he possesses has the physical characteristics which, under the law (whether or not the defendant knows that the law so provides), mandate its registration. The same reasoning applied to a pistol leads to the conclusion that the defendant must know that it is fully automatic (but that he need not know either that the law requires registration of fully automatic pistols or that the particular pistol is in fact not registered). That an item is a "firearm" within *common* parlance is *wholly irrelevant* under the terms of the Act. The Act does not purport to create any character of presumption or regulation about items which are *generally* known as "firearms." Rather, it defines "firearm" in a very specific and limited manner—so as to *exclude* the *overwhelming majority* of guns sold at retail in the United States (*see* 26 U.S.C. § 5845). And, it deals *only* with firearms *as so defined*.[4]

Second, we have some concern that allowing a person to be convicted of a very serious offense like the one involved here,[5] without requiring knowledge of such facts as would alert a reasonable person to the likelihood of regulation, in this case knowledge that the two pistols could fire or had been modified to fire automatically, might be inconsistent with the due process clause of the Fifth Amendment. In *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), the Supreme Court addressed the issue of whether a Los Angeles ordinance requiring convicted felons who remain there for more than five days to register with the police violated due process when applied to a person who had no actual knowledge of the duty to register and was not shown to be properly chargeable with such knowledge. *See id.* 78 S.Ct. at 242. Noting that there was nothing about being present in Los Angeles that would of itself alert a person to inquire into the necessity of registering with the police, the Court held that under the circumstances present in that case the defendant could "not be convicted consistently with due process." *Id.* at 243–44. Although *Lambert* raises more questions than it answers, we are not convinced that its reasoning would not apply to a case in which an innocent person happens, under wholly unsuspicious circumstances, to purchase a gun that to all outward appearances and so far as he reasonably knows is legal, but in fact has been secretly modified so as to be fully automatic and hence illegal if not registered to him in the National Firearms Registration and Transfer Record.

Finally, we believe that as matter of statutory construction, requiring some degree of knowledge of the *facts* that make a weapon a "firearm" within the meaning of the Act is preferable to not requiring such knowledge. The recent case of *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), is instructive on this point. In *Liparota*, the Supreme Court addressed the issue of whether in a prose-

---

3. *See Freed*, 91 S.Ct. at 1120 (Brennan, J., concurring):

"To convict appellees of possession of unregistered hand grenades, the Government must prove three material elements: (1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered. *The Government and the Court agree that the prosecutor must prove* knowing possession of the items and also *knowledge that the items possessed were hand grenades.* Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered status of the gre-

nades—knowledge must still be proved as to the other two elements. Consequently, the National Firearms Act does not create a crime of strict liability as to all its elements." (Emphasis added.)

4. Other statutes do deal more generally with weapons which are conventionally known as firearms. *See, e.g.,* 18 U.S.C. §§ 921–928.

5. Section 5871 of 26 U.S.C. provides that a person who violates section 5861(d) "shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

cution for unauthorized acquisition or possession of food stamps under 7 U.S.C. § 2024(b)(1) "the Government must prove that the defendant knew that he was acting in manner unauthorized by statute or regulations."[6] *Liparota,* 105 S.Ct. at 2086. In determining that the answer to this question was in the affirmative, the Court reasoned that "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct." *Id.* The Court also noted that "requiring *mens rea* is in keeping with our long-standing recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Id.* at 2089 (quoting *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 1059, 28 L.Ed. 2d 493 (1971)).

If this reasoning is not necessarily dispositive of the issue of the knowledge required under section 5861(d), it is certainly relevant to that issue. Although failing to require the government to prove that the defendant in a section 5861(d) prosecution had sufficient knowledge of the particular physical characteristics of a firearm to alert him to the likelihood of regulation might not criminalize as broad a range of conduct as might have been criminalized by a contrary holding in *Liparota,* it is plain that failing to require such knowledge could easily result in a person without any "guilty knowledge" *whatever* being convicted of this very serious crime merely because he knows that the item that he possesses is a firearm within the general, popular meaning of the term.[7] In the absence of an express or implied congressional purpose to subject otherwise innocent purchasers or possessors to the very serious penalties contained in section 5871, we believe that the "time-honored interpretive guideline" found in the rule of lenity should be applied in interpreting section 5861(d), so that here, for example, a finding that the defendant knew the pistols were fully automatic would be necessary.[8] Or at the very least, it seems to us, a "should have known" standard ought to be required. *See United States v. Delahoussaye,* 573 F.2d 910, 912 (5th Cir.1978).

Surely, every year thousands of law-abiding Americans purchase from reputable retailers, in wholly innocent transactions in which all the required paperwork is properly completed, new semiautomatic guns which have been manufactured by known, reputable concerns. Can Congress have intended that such purchasers may be subjected to ten years' imprisonment if, for example, a disgruntled employee of the manufacturer has secretly altered the internal workings of the gun thus purchased so that it is fully automatic, in a situation where the purchaser does not and could not reasonably know this when he acquires the gun? Even if the "innocent" purchaser finds out the day after he acquires the gun, and promptly notifies the proper authorities to take charge of it, he is nevertheless guilty under the government's theory. We find it difficult to believe that Congress intended such a result.

However much we might prefer a different rule, the fact remains that a panel of this Court has already considered this issue and has held that the only knowledge required to be established in a section 5861(d) prosecution is knowledge on the part of the defendant that the item he possessed was a firearm within the general meaning of the term. *See Vasquez,* 476 F.2d at 732. *Accord United States v. Shilling,* 826 F.2d 1365, 1368 (4th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 863

---

**6.** All conceded that the government had to prove that the defendant knowingly acquired the food stamps. The only dispute involved was whether the defendant had to know that acquisition of these food stamps was an unauthorized act.

**7.** We further note that our analysis in this respect is also fully consistent with the views expressed in Justice White's *Liparota* dissent.

**8.** That section 5861(d) does not expressly require such knowledge does not weigh heavily in favor of a contrary interpretation. As *Liparota* states: "'[C]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.'" *Id.* 105 S.Ct. at 2088 (quoting from *United States v. United Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978)).

(1988); *Morgan v. United States*, 564 F.2d 803, 805 (8th Cir.1977).[9] Absent an intervening Supreme Court or en banc decision or a change in the statutory law, we are bound to follow the prior panel's decision. *See Umphlet v. Connick*, 815 F.2d 1061, 1063 (5th Cir.1987); *Washington v. Watkins*, 655 F.2d 1346, 1354 n. 10 (5th Cir. 1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). We must therefore evaluate the district court's instructions regarding knowledge in light of the holding in *Vasquez*.

■ In its charge to the jury, the district court stated in pertinent part as follows:

"[I]n order to establish the offenses prohibited by these statutes, there are two essential elements which the government must prove beyond a reasonable doubt:

"First, that the defendant at the time and place charged in the indictment knowingly possessed a firearm, it can be any other weapon or silencer, and

"Second, that the firearm or any other weapon or silencer was not then registered to the defendant in the National Firearms Register and Transfer Record.

"It is not necessary for the government to prove that the defendant knew that the item described in the indictment was a firearm which the law requires to be registered. What must be proved beyond a reasonable doubt is that the defendant knowingly possessed the item as charged, that such item was a firearm, as defined before, and that it was not then registered to the defendant in the National Firearms Register and Transfer Record."

Under these instructions, the only knowledge that the jury needed to find that Anderson had was knowledge that he possessed a "firearm," a "silencer," or "any other weapon." The jury did *not* have to find that Anderson knew that these items had the physical characteristics which made them "firearms" within the meaning of section 5845(a).[10] Because the charge

---

**9.** *United States v. Gonzalez*, 719 F.2d 1516, 1522 (11th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984), may also similarly hold. *Morgan* is a jury instruction case, it relies on *Vasquez* and directly focuses on whether the defendant "must have had actual knowledge that he possessed a weapon which fires automatically." *Morgan*, 564 F.2d at 805. *Shilling* and *Gonzalez* are sufficiency of the evidence cases. *Shilling*, though holding "there is substantial circumstantial evidence that Shilling knew the weapons were converted [to fully automatic]," goes on to reject *Herbert* and follow *Morgan*. *Shilling*, 826 F.2d at 1368. *Gonzalez* is somewhat unclear, stating at one point that it must be shown that the defendant "knowingly possessed an automatic weapon" but at another that it need not be shown that he "knew that the weapon ... was a 'firearm' within the meaning of the statute." 719 F.2d at 1522. Whether the last statement refers to knowledge of the law or of the physical characteristics of the weapon is unclear. *Gonzalez* also states "[t]here is no scienter required." *Id.*

**10.** Anderson objected to the last paragraph of the instructions quoted in the text, stating in part as follows:

"Mr. Arnold [defense counsel]: Your Honor, I object to the paragraph concerning the statement that it's not necessary for the government to prove that the defendant knew that the item described in the indictment was a firearm which the law requires to be registered...."

"[B]y giving the instruction that it's not necessary for the government to prove that the defendant knew that the item described in the indictment was a firearm—

"The Court: Required to be registered.

"Mr. Arnold: Required to be registered, that in fact that should go further to contain basically the same statement, that knowingly does, and not because of mistake or accident.

"The Court: Okay. Overruled."

The objection was repeated later:

"Mr. Arnold: This is the part we are objecting to, it is not necessary for the government to prove that the defendant knew the item described in the indictment was a firearm which the law requires to be registered.

"The Court: Okay. Overruled."

While the objection was not a model of clarity, we believe it was understood by the district court and was minimally adequate. We also note in this connection that defense counsel had requested an instruction as follows (which was not given):

"The National Firearms Act requires no specific intent or knowledge that the firearm which the accused is charged with possessing was unregistered. However, the Government is required to prove beyond a reasonable doubt that the defendant had knowledge that the firearm which he is accused of possessing was of a type that possession of is prohibited by Title 26 United States Code, Section 5845."

Finally, it seems evident that this was a matter which concerned the jury, in that it sent in a note stating: "May we have a copy of Title 26

allowed the jury to convict even though it did not find that Anderson knew the pistols were fully automatic, Anderson contends that it was erroneous. However, as our previous discussion makes plain, such an instruction is perfectly consistent with *Vasquez.* We therefore hold that the district court did not err in connection with its jury charge on knowledge.

*Sufficiency of the evidence*

The third and final issue Anderson raises is whether there was sufficient evidence to support his convictions. The standard that we use in evaluating such a claim is whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. For this purpose, we consider the evidence in the light most favorable to the government, resolving all reasonable inferences and credibility choices in favor of the verdict. *United States v. Punch,* 722 F.2d 146, 153 (5th Cir.1983). We determine that there was sufficient evidence to support the conviction on each of the three counts.

■ With respect to the convictions for possessing the two unregistered machine guns, Anderson does not dispute that he knew he possessed the two pistols that he was charged with possessing, nor does he claim that he did not know that they were firearms within the *general* meaning of the term. However, he does assert that he did not know that these two pistols were fully automatic, rather than semiautomatic as they appeared to be. There was substantial evidence that the weapons appeared to

be convential semiautomatic pistols, and that only by expert examination after taking them apart (or by firing them) could it be ascertained that they were fully automatic. However, as noted above, under the law of this Circuit, whether Anderson actually knew—or should have known—that these two pistols were fully automatic is irrelevant. So long as Anderson knew that he possessed these two pistols and that they were firearms within the *general* meaning of that term, both of which facts the jury could properly have found based on the evidence, he had sufficient knowledge to be convicted of violating section 5861(d).[11] Because there is no dispute that these weapons were firearms as defined in section 5845(a)(6) and that they had not been registered to Anderson, we hold that there was sufficient evidence to support his two convictions for possessing machine guns in violation of section 5861(d).

■ With respect to Anderson's conviction for possessing an unregistered silencer, Anderson does not dispute that the search of his residence uncovered both the rear portion of a siotic-type silencer and certain component parts of the front portion of such a silencer. He simply argues that because all of these parts could not be assembled to make a complete siotic-type silencer (certain components of the front portion were missing), there is insufficient evidence to support his conviction for possessing an unregistered silencer. We disagree. Viewing the evidence in the light most favorable to the prosecution, we be-

---

definition of knowing?" at which point the court advised the jury:

"I think that the best way to respond to that is to read to you again what I did before so you can have it more closely in mind.

"'The word knowingly, as that term has been used in the instructions which I have given to you, means that the act was done voluntarily and intentionally and not because of mistake or accident.'

"And in connection with that, to let you hear again the instruction that I have given before."

The court then reread to the jury the objected to last paragraph of the instructions quoted in the text, beginning "It is not necessary...." That concluded the court's response. The above-noted question was the only one asked by the jury.

**11.** Even if we were free to follow *Herbert* and hold that knowledge of the particular characteristics that made these weapons subject to the Act, *i.e.,* that they could be fired automatically, had to be proved, nevertheless, considering that the search of Anderson's residence uncovered manuals describing conversion of these particular weapons from semiautomatic to automatic, and also the fact that the weapons (except one pistol, which was under the bed) were kept in a secret, hidden vault with the manuals and spent casings, we believe that there was clearly sufficient evidence to convict Anderson of violating section 5861(d) in connection with these items even under the *Herbert* standard.

lieve that the jury could properly have found that Anderson knowingly possessed the rear portion of a silencer, since it was found in the vault in his residence, and that Anderson knew that this item was at the very least a portion of a silencer, since in addition to the components of the silencer there was also recovered from that vault a document describing fabrication of that type of silencer. When these facts are considered together with the undisputed testimony at trial that the rear portion *alone* produced a reduction in sound from 157 to 148 decibels, the jury could properly have concluded that this device fit the definition of silencer contained in the court's charge, *i.e.*, "any device for silencing, muffling or diminishing the report of a portable firearm, including any combination of parts designed or redesigned and intended for use in assembling or fabricating a firearm silencer or firearm muffler and any part intended only for use in such assembly or fabrication," [12] and thus was a firearm within the meaning of section 5845(a)(7). Given that there is no dispute that this device was not registered to Anderson in the National Firearms Registration and Transfer Record, we hold that there was sufficient evidence to convict him under section 5861(d) for possession of an unregistered silencer.

### Conclusion

For the reasons stated, we conclude that none of Anderson's complaints on appeal presents any reversible error. We therefore affirm the district court's judgment.

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I fully concur in everything that Judge Garwood has said. I specially concur in this opinion only to emphasize that I fully agree with Judge Garwood's conclusion that *United States v. Vasquez*, our decision which controls this case, was wrongly decided, and until it is overruled by en banc

consideration, it will continue to serve as most unfortunate precedent. I would therefore urge en banc consideration of this case so that *Vasquez* may be reconsidered.

---

12. This definition was drawn from 18 U.S.C. § 921(a)(24). Section 5845(a) provides that "[t]he term 'firearm' means ...; (7) any silencer (as defined in section 921 of Title 18, United States Code); ...."