UNITED STATES of America

v.

Boysie MAHABIR.

Crim. No. L–93–022.

United States District Court,
D. Maryland.

Aug. 31, 1993.

William A. Murphy, Jr., Baltimore, MD, for defendant Boysie Mahabir.

Lynne A. Battaglia, U.S. Atty., and Jack Purcell, Asst. U.S. Atty., of Baltimore, MD, for U.S.

## MEMORANDUM AND ORDER

LEGG, District Judge.

This Court is called upon to decide pre-trial motions filed by defendant Boysie Mahabir. For the reasons stated herein, Mahabir's motions are hereby GRANTED IN PART and DENIED IN PART.

## I. FACTS

The original defendants in this case, Boysie Mahabir and Rayford Knight were charged in a two count indictment with conspiracy to distribute cocaine (Count I) and possession of cocaine with intent to distribute (Count II). Knight filed no pre-trial motions, but, at his request, was severed and transferred to the Eastern District of New York in anticipation that he would plead guilty and cooperate with the authorities there. Mahabir filed the following written pre-trial motions, each of which is "boiler-plate", and most of which are inapplicable to the facts of this case:

1. Motion for pre-trial access to witnesses (Paper 31).
2. Motion to exclude and sequester identification witnesses (Paper 32).
3. Motion to suppress tapes (Paper 33).
4. Motion to dismiss indictment (Paper 34).
5. Motion to suppress evidence (Paper 35).

The Court scheduled an evidentiary hearing (which counsel estimated would be brief) for the afternoon of April 21, 1993. When it became apparent that the hearing would not conclude on the 21st, it was continued on April 22, 1993. Counsel anticipated that the hearing, as continued, would require several additional hours or, at most, "half a day."

When the hearing did not conclude on the 22nd, it was continued to April 26, 1993. With the express agreement of both counsel, the Court set a time limit under which the hearing was to begin at 9:30 a.m. and conclude no later than 6:30 p.m. On the 26th, the start of the hearing, at the request of counsel for Mahabir, was set back several hours, but only upon the express assurance of defense counsel that the hearing would conclude on time.[1] At 6:30 p.m. the Court terminated the hearing although Mahabir's last witness was still on the stand. Mahabir's counsel objected to the decision to end the hearing before his questioning was exhausted. This Court finds, however, that

---

1. Mr. Mahabir's counsel had the floor for approximately eighty percent of the time devoted to all three hearings.

Mahabir was not prejudiced because his counsel had exhaustively questioned the witness and was merely "running out the clock."[2]

During the hearing, the following witnesses were called:

Officer Kevin Barrows of the Charles County Sheriff's Department;

Carey Grace, whose tractor, when seized, was loaded with almost 300 kilograms of cocaine. Grace, invoking the Fifth Amendment, declined to answer questions;

Special Agent Donald Canestraro of the Drug Enforcement Agency;

Anthony Johnson, who was arrested while off-loading the cocaine from Grace's tractor into a pick-up truck that he had driven from Brooklyn, New York in the company of defendant Mahabir. Johnson, invoking the Fifth Amendment, declined to answer questions;

Detective Brian S. Eley of the Charles County Sheriff's Department;

Defendant Boysie Mahabir, who, along with Rayford Knight, operated the company, Boysie Trucking, Inc., which owned the trailer driven by Grace;

Sergeant Wyatt of the Charles County Sheriff's Department, who arrested Mahabir; and

Detective Quentin Gore of the Charles County Sheriff's Department.

At the hearing, Mahabir's counsel articulated the motions he was pressing, as follows:

1. The arrest of Grace and the seizure of the cocaine were illegal; therefore the tangible evidence seized should be suppressed.

2. At the hearing, Grace and Johnson, who were called by Mahabir, invoked the Fifth Amendment and declined to answer questions. Mahabir moved the Court to (i) immunize them or (ii) order the government to immunize them so that they could be compelled to testify.

3. The consensually monitored recordings of telephone calls placed by Grace and Johnson should be suppressed.

4. The arrest of Mahabir was illegal and statements made by him at the time of arrest should be suppressed.

5. Statements made by Mahabir when he was questioned by DEA Agent Canestraro and Detective Quentin Gore were involuntary and, therefore, should be suppressed.

6. Evidence seized at 32 Van Houten Avenue, which served jointly as Mahabir's residence and the office of Boysie Trucking should be suppressed. Mahabir argues that the search warrant was defective and that the search itself was overbroad.

Following the hearing, the Court heard oral argument on May 6, 1993. The rulings stated below supplement oral rulings made from the bench during the hearing and at oral argument.

1. The following boilerplate motions are DISMISSED AS MOOT because, as Mahabir conceded, they are inapplicable to the facts presented in this case:

(i) Motion for pre-trial access to witnesses (Paper 31); and

(ii) Motion to exclude and sequester identification witnesses (Paper 32).

■ 2. The motion to dismiss the indictment (Paper 34) is DENIED. The indictment in the instant case charges Mahabir with conspiracy to distribute cocaine (Count I) and possession with intent to distribute cocaine (Count II). Rule 7(c)(1) of the Fed. R.Crim.P. requires that an indictment "be a plain, concise and definite written statement of the essential fact constituting the offense charged." The Court finds that the indictment (i) delineates a clear time frame (November 1992 to January 11, 1993), (ii) contains the elements of the offenses charged, (iii) fairly informs the defendant of the charges against him, and (iv) enables him to plead double jeopardy in defense of future prosecutions for the same offenses.

---

**2.** The district court could not function if the trial judge was unable to enforce time limits expressly agreed to by counsel.

For these reasons, the indictment is sufficient. *See Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Roman,* 728 F.2d 846 (7 Cir.1984), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); *United States v. American Waste Fibers Co.,* 809 F.2d 1044 (4th Cir.1987).

3. Mahabir's motion to suppress tangible evidence seized from Grace is DENIED.

 On January 11, 1993, at approximately 2:48 a.m., Officer Kevin Barrows of the Charles County Sheriff's Department saw a tractor (without a trailer) run a red light on Route 301 at St. Patrick Drive in Waldorf, Maryland. Officer Barrows lawfully stopped the tractor for the purpose of issuing a traffic citation.

The tractor's driver, Carey Grace, produced a New York driver's license, which Officer Barrows learned (by calling in the number to headquarters) had been suspended as of October 25, 1992. When Barrows asked Grace whether he knew that his license was suspended, Grace answered that he did, adding that he had neglected to pay a fine. Barrows then questioned Grace about his ties to Maryland; upon learning that Grace had none (presenting a risk that Grace would not appear at trial), Barrows placed Grace under arrest for violating Maryland Transportation Article 16–303(f) (driving on a suspended out-of-state license). Barrows advised Grace that the tractor would be impounded and taken to a storage lot until it could be recovered by someone with a valid driver's license.

Barrows placed Grace in the squad car and, incident to the arrest, searched the cab of the tractor. He saw in the sleeping area behind the seat five packages wrapped in plain brown paper. The packages were unmarked and all of the seams were taped. This aroused the suspicions of Barrows, who was a former narcotics officer. He opened one of the packages and found inside individually wrapped bags of cocaine. In all, the packages contained 199 kilograms of cocaine.

This Court finds that Officer Barrows (i) lawfully stopped Grace for running a red light, (ii) lawfully arrested Grace for driving on a suspended out-of-state license, (iii) lawfully searched the passenger areas of the tractor incident to Grace's arrest, and (iv) lawfully searched the boxes. *See New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864–64, 69 L.Ed.2d 768 (1981); *Michigan v. DeFillipo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2630–31, 61 L.Ed.2d 343 (1979).

 Because Barrows was conducting an ordinary traffic stop, Grace was not "in custody" for Miranda purposes [3] when Barrows questioned him about his license. *See Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

 In addition, the discovery and seizure of the cocaine were inevitable even had Grace not been arrested. Because Grace lacked a valid license, Officer Barrows would not have released the tractor to him, and, as Officer Barrows testified, the vehicle would, in the ordinary course, have been impounded. Once impounded, it would have been searched pursuant to the Charles County Sheriff's Department General Vehicle Storage Guidelines.

The inventory search would have inevitably lead to the discovery of the cocaine. In *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), the Supreme Court held that, "[i]f the prosecution can establish by preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... [ ] the evidence will be received." This Court finds that the government has carried its burden in this case, which renders the cocaine admissible under an alternative theory. Thus, Mahabir's motion to suppress the fruits of the search of the tractor will be DENIED.

4. Mahabir's motion to grant Mr. Grace and Mr. Johnson immunity or to require the government to immunize them is DENIED.

 The government may obtain a witness' testimony despite a Fifth Amendment claim by offering the witness immunity. A defendant has no such power. This inequali-

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ty in securing testimony is unconstitutional, Mahabir contends.

Mahabir cannot prevail on this point. It is settled that the power to grant or withhold immunity lies solely within the prosecutor's discretion. This Court has no authority to grant immunity to witnesses or to require the prosecution to do so. *See United States v. Tindle*, 808 F.2d 319, 326 (4th Cir.1986); *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983).

5. Mahabir's motion to suppress the consensually monitored telephone calls placed by Grace and Johnson is DENIED.

■ After his arrest, Grace, who is represented by Assistant Public Defender Daun Wiers, voluntarily agreed to assist the Charles County and federal investigators by making two consensually monitored calls during which he spoke to Rayford Knight. Later, upon his arrest, Johnson voluntarily made a consensual call, also to Knight. This Court finds that Grace and Johnson made these calls voluntarily and proceeded with the conversations knowing that law enforcement officials were listening and recording. Thus, the calls are exempted from Title III and are not illegal wiretaps. *See* 18 U.S.C. 2511(2)(d); *United States v. Sanford*, 673 F.2d 1070, 1072 (9th Cir.1982).

6. The arrest of Mahabir was legal. Nevertheless, the government has stated that it will not seek to introduce statements made Mahabir at the time of his arrest. Thus, Mahabir's motion to suppress these statements is hereby DISMISSED AS MOOT.

■ The Charles County Sheriff's Department had probable cause to arrest Mahabir, who, in apparent response to a consensual call placed by Grace, arrived with Johnson in a pick-up truck on January 12, 1993 to remove the cocaine from Grace's tractor. Upon their arrival, Mahabir and Johnson circled Grace's tractor, which DEA agents had parked in the parking lot of the Physician's Memorial Hospital in LaPlata, Maryland.[4] From their movements, it appeared that the two men were suspicious of a trap.

Johnson was arrested while off-loading the boxes of cocaine from the tractor. Mahabir was arrested moments later as he walked from a convenience store in the direction of Johnson's unloading efforts. Thus, the arrest was legal and supported by probable cause. *See United States v. Sinclair*, 983 F.2d 598, 601 (4th Cir.1993) (probable cause exists when, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense") (citation omitted).

One of the arresting officers, Detective Sergeant Wyatt, testified that Mahabir, upon his arrest, made several false exculpatory statements, such as denying knowledge concerning the tractor. At the hearing, government counsel stated that he would not use the statements at trial. Thus, Mahabir's motion to suppress statements made by him at the time of his arrest is DISMISSED AS MOOT.

7. Mahabir's motion to suppress the statements he made when he was interviewed by Special Agent Donald Canestraro and Task Force Officer Quentin Gore is GRANTED IN PART and DENIED IN PART.

■ After his arrest, Mahabir was taken to the Charles County Sheriff's headquarters. One of the arresting officers, Detective Wyatt, read Mahabir his Miranda rights. Mahabir specifically invoked Miranda by signing a form stating that he did not wish to make a statement. Exhibit A to Government's consolidated response to pretrial motions.

Subsequently, Mahabir was interviewed by Canestraro and Gore. Mahabir testified that the officers threatened and intimidated him into making statements. According to Mahabir, the officers:

(i) questioned him in a loud and threatening tone.

---

4. During the consensual call to be placed to Rayford Knight, Grace, under instructions from

the DEA, told Knight that he had suffered a heart attack and was in a hospital in La Plata.

(ii) told him his "ass was grass," called him a "mother-fucker" and threatened to "stick my hand up your ass."

(iii) told him that he would be sentenced to forty years, that the government would seize everything he owned, that he would never see his children again, and that his wife and children would be "out on the street."

(iv) told him that cooperation was the "way out," and that they would tell the prosecutor if he cooperated and perhaps the prosecutor would drop his sentence.

Mahabir testified that, after making these threats and promises, the agents then read him his Miranda rights and he made certain statements, including: (i) that he did not know Mr. Johnson, (ii) that certain money seized from Cary Grace in Texas was his,[5] and (iii) that he had no business relationship with Mr. Knight.

Detective Gore and Special Agent Canestraro disagreed with Mahabir's version of the interview. They testified that:

(i) Mahabir was not threatened,

(ii) neither Gore nor Canestraro raised his voice,

(iii) Mahabir was nervous, but otherwise composed,

(iv) Mahabir said that he understood his rights and initialed a F.P.S. Form 16 indicating that he had been advised of and understood his rights. (Government Exhibit B).[6]

(v) Mahabir consented to be interviewed without an attorney. (Government Exhibit B).

(vi) They explained to Mahabir that he was in serious trouble, that he was involved with a large quantity of drugs, that he might not see his family again, and that he might face a long sentence.

(vii) They told Mahabir that it was in his best interest to cooperate and that if he cooperated the agents would speak to the United States Attorney.

(viii) Gore testified that he knew Mahabir had been "Mirandized," but he did not know that Mahabir had invoked his right of silence. Canestraro stated that he was not aware that Mahabir had signed a Miranda form. Had he known that Mahabir had declined to make a statement, he would not have questioned Mahabir further.[7]

(ix) After signing the second Miranda form, Mahabir stated that he did not know Johnson and that he did not know anything about the truck. When told that he and Johnson had been under surveillance when they arrived, Mahabir said that he had come to La Plata for the purpose of getting the truck.

At the hearing, government counsel stated that he would not use Mahabir's "false exculpatory" statements against him in the government's case-in-chief. The statements, the government conceded, might violate *Miranda* because Mahabir had been questioned after he had expressed his intention not to make a statement. Nevertheless, the government seeks to employ the statements to impeach Mahabir in the event that he takes the stand at trial and testifies in a manner inconsistent with the statements.

---

5. Before driving to Maryland, Grace was stopped in Texas by troopers from the Texas Department of Public Safety. They seized $33,000 in U.S. currency and the trailer. Grace was arrested, but subsequently released, and he continued driving the tractor en route to New York. He was arrested in Maryland by Officer Barrows.

6. There was some disagreement between Gore and Canestraro as to whether the Miranda warnings were given to Mahabir at the outset of the interview or only after they had emphasized the seriousness of the charges and the benefits of cooperation. The Court considers this issue to be material only insofar as it relates to the credibility of the two officers.

7. Special Agent Canestraro's testimony is inconsistent with the testimony of Detective Wyatt, who stated that he had told Canestraro that Mahabir had invoked Miranda. Given the government's announced intention not to use Mahabir's statements in its case-in-chief, this inconsistency is immaterial. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (voluntary statement obtained in violation of *Miranda* may be used to impeach criminal defendant who testifies at trial if it contradicts his testimony).

■ Because of the government's concession, violation of *Miranda* is not an issue. A statement obtained in violation of *Miranda* may be used for impeachment, provided that the statement is voluntary and trustworthy. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The Court finds that Mahabir's statements were voluntary. In making this determination, the Court credits the testimony of Canestraro and Gore that they did not threaten or intimidate Mahabir. Conversely, the Court expressly rejects Mahabir's testimony that the officers raised their voices, used profanity, and/or threatened him. The officers did not intimidate or threaten Mahabir and he was not worn down by improper interrogation tactics, lengthy questioning, or trickery and deceit.

Although the officers did not threaten Mahabir, they did make statements concerning the seriousness of the charges he faced and the benefits of cooperation. This Court concludes that these representations did not cross the line delineated by the United States Court of Appeals for the Fourth Circuit in *United States v. Shears*, 762 F.2d 397, 401 (4th Cir.1985) and *United States v. Wilson*, 895 F.2d 168, 173 (4th Cir.1990).

In *Shears*, the court stated that government agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary. "Government agents may initiate conversations on cooperation, when they promise to make a defendant's cooperation know to the prosecutor, and they may even be able to make and breach certain promises without rendering a resulting confession involuntary." 762 F.2d at 401. In footnote 2 of the *Shears* opinion, the Fourth Circuit discussed representations that may permissibly be made to a defendant. The representations made to Mahabir are within the scope of those permitted. Accordingly, Mahabir's motion will be GRANTED IN PART insofar as the government will not be permitted to introduce in its case-in-chief statements made by Mahabir after his arrest. The government will, however, be permitted

to cross-examine Mahabir concerning those statements if he testifies at trial.[8]

8. Mahabir's motion to suppress evidence seized at 32 Van Houten Avenue is DENIED.

■ Under the supervision of Special Agent Canestraro, officers executed a search warrant at 32 Van Houten Avenue, which served as both the Mahabir residence and as headquarters of Boysie Trucking, Inc. The warrant, (Government Ex. C), which was issued on the strength of Special Agent Canestraro's affidavit (Government Ex. C), was authorized by the United States District Court for the District of New Jersey.

At the hearing, Mahabir was able to demonstrate that some information in the affidavit was not literally accurate, but constituted deductions made by Canestraro based upon the information known to him at the time. Canestraro put his own "gloss" on statements made by Johnson (referred to in the affidavit as "S–1") to Detective Eley, which statements were related to Canestraro and placed by him in the affidavit as follows:

(i) The affidavit (p. 10) states that "S–1 was then instructed by Mahabir to look inside the cab of the semi to insure that the boxes *containing the cocaine* were still inside the cab of the truck." (Emphasis added). Johnson did not use the words "containing the cocaine;" Canestraro added this language because the boxes did, in fact, contain cocaine.

(ii) The affidavit relates (p. 9) that "S–1 stated that Cherokee Knight was a partner of Mahabir in the *cocaine* and trucking business." (Emphasis added). Johnson in fact, stated that Mahabir and Knight were partners in the trucking business; Canestraro extrapolated by adding the words "and cocaine."

(iii) The affidavit (p. 11) relates that "S–1 stated that another *load of cocaine* was en route the New York City/Jersey City, N.J. area in a semi-tractor trailer truck. This vehicle left New York on Friday, January 8, 1993 operated by an individual known as

---

8. *Miranda* is concerned with government coercion of a confession. Mahabir, however, did not

confess; the statements made by him fall in the category of "false exculpatory" statements.

'single' Dallas." (Emphasis added). Johnson did not use the words "of cocaine"; they were supplied by Canestraro as a matter of deduction.

Defense counsel extensively questioned Special Agent Canestraro and Detective Eley concerning the affidavit. The questioning amounted to a *de facto* Franks hearing. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This Court finds that while Special Agent Canestraro's deductions were somewhat misleading, he did not consciously attempt to mislead the magistrate judge. While a careful draftsman would have avoided the extrapolations, they did not render the statements false.

Additionally, the extrapolations were not necessary to a finding of probable cause. Setting aside the extrapolations, there remains a substantial basis for concluding that probable cause existed for the issuance of a search warrant.[9] *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990). The affidavit clearly set forth facts that suggested that Mahabir and his business (Boysie Trucking) were involved in the shipment of the cocaine seized by Officer Barrows. It is reasonable to assume that evidence of drug activity would be found in the location where Mahabir lived and conducted his transportation business. *United States v. Ayers*, 924 F.2d 1468, 1478 (9th Cir.1991). Under all of the circumstances, the affidavit demonstrated a fair probability that contraband or evidence of drug activity would be found at 32 Van Houten Avenue. *Blackwood, supra*, at 142.

Mahabir also seeks to exclude evidence seized at 32 Van Houten Avenue on the grounds that (a) the warrant authorizing the search did not meet the particularity requirement of the Fourth Amendment, and (b) the searches for, and seizures of, documents exceeded the scope of the search warrant. The Court finds that both of these contentions lack merit.

▬▬▬ Although the Fourth Amendment requires that a search warrant describe with particularity "the place to be searched and the ... things to be seized," U.S. Const. amend. IV, it does not require that a warrant list with specificity each and every item to be seized. Indeed, as the Fourth Circuit reasoned in *United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir.1987), "although [a] warrant uses generic terms (such as books, records, bank statements, etc.) without detailed descriptions, we consider this to be acceptable, since the Government could hardly have known in detail what precise ... records were maintained by the defendant."

The warrant in question here contained an attachment ("Attachment B") that listed ten categories of items that Canestraro delineated as "fruits, instrumentalities and evidence of violation of Title 21, United States Code, Section 846," (conspiracy to distribute and possess with intent to distribute cocaine). Several of the items delineated by Canestraro were stricken from the warrant by the magistrate, indicating a careful review of the warrant by the magistrate. The Court finds that the search warrant comports with the Fourth Amendment's particularity requirement, and that its description of items to be seized is virtually indistinguishable from warrants approved in both *Shilling* and *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir.1986). *See also United States v. Fannin*, 817 F.2d 1379, 1383 (9th Cir.1987) (warrant that limits search to evidence of a particular crime and that lists categories of items to be seized satisfies Fourth Amendment).

▬▬▬ With respect to the execution of the search warrant, the Court finds that the search of 32 Van Houten Avenue on January 25, 1993 was not conducted in disregard of the warrant. The Court accepts Agent Canestraro's testimony that the agents who searched Mahabir's home preliminarily reviewed the documents they found in order to determine if they fell within the scope of the warrant, and that Canestraro looked at the documents as well. The Court also finds that the agents seized only those documents

---

9. Mahabir also contends that certain exculpatory evidence was omitted from the affidavit. To be material under *Franks*, an omission must do more than potentially affect the probable cause determination: it must be necessary to the find-

ing of probable cause. *United States v. Colkley*, 899 F.2d 297, 300–301 (4th Cir.1990). None of the omissions, if included in the affidavit, would defeat probable cause for the search warrant.

that they believed in good faith to be evidence of the crime set forth in the warrant, and that they left behind a large number of documents.

Because Mahabir has failed to demonstrate that the search of his residence was conducted with "flagrant disregard" for the search warrant, the Court declines defendant's invitation to suppress all of the evidence seized during the search. *See United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.1985). If Mahabir demonstrates during the course of the trial that a particular item seized during the search falls outside the scope of the warrant, the Court will exclude the item at trial.[10] Such a determination, however, is premature at this juncture, since Mahabir has failed to point to any specific document or item seized during the search that he contends falls outside of the scope of the warrant. Accordingly, the motion to suppress is DENIED insofar as it requests suppression of all items seized during the search and is DENIED WITHOUT PREJUDICE insofar as it concerns specific items that allegedly fall outside of the scope of the warrant.

IT IS SO ORDERED.

---

**10.** The fact that a particular item falls outside the scope of the warrant and is therefore inadmissible does not require the Court to suppress seized evidence that is properly covered by the warrant. *Shilling* at 1369.