**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald Francis McKNIGHT,
Defendant–Appellant.**

**No. 91–2215.**

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1992.

Majorie A. Meyers, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Kathlyn G. Snyder, Asst. U.S. Atty., Paula C. Offenhauser, U.S. Atty., Daniel C. Rodriguez, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Appeals from the United States District Court for the Southern District of Texas.

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Gerald Francis McKnight (McKnight) appeals his conviction following a jury trial, and resulting sentence, on charges of (i) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and (ii) possessing or using a firearm in connection with the possession of over 1000 grams of a mixture containing a detectable amount of methamphetamine with intent to distribute (in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)) resulting in a violation of 18 U.S.C. § 924(c)(1). Concluding that his claims of error on appeal do not warrant reversal of either his conviction or sentence, we affirm.

**Facts and Proceedings Below**

The evidence at trial showed that McKnight owned a small house in rural Hockley, Texas, which he shared with his eighty-four-year-old mother and a boarder, John Agnazoli (Agnazoli), who had been staying there about six weeks. The house had one bedroom, in the back, in which Agnazoli stayed. McKnight and his mother slept in the front room of the house and shared a dresser. Also on the property were chickens that McKnight and his mother raised and three pit-bull dogs.

At approximately 11:00 p.m. on May 18, 1989, pursuant to a warrant, officers from the Waller County Sheriff's Office, the Waller County Constable's Office, and the Houston Police Department searched McKnight's house for evidence of a methamphetamine operation about which they had received an informant's tip. Upon executing the warrant, the officers found McKnight and his mother present in the house, but no one else was in the house or on the premises (then or at any time during the more than two hours the officers remained there). The officers also then found a total of six firearms strewn about the residence, most of them loaded. Four were rifles, one was a shotgun, and one was a handgun found in the dresser that McKnight and his mother shared. McKnight's mother, the sole defense witness, testified that she kept the shotgun to ward off predatory animals interested in the chickens and that the rifles belonged to Agnazoli, who had brought them to the house earlier that day.[1] She did not recognize, nor know the origin of, the handgun in the dresser.

The officers also found four large jars in the freezer compartment of the house's refrigerator, each jar being full of a liquid mixture containing a small percentage of methamphetamine. McKnight's mother testified that she had not seen the jars before, even though she had opened the freezer while preparing dinner that evening. One of the jars was successfully fingerprinted, but the otherwise unidenti-

---

1. McKnight's mother testified that Agnazoli and a friend of his had been in the house alone that day while she and McKnight fed and watered the chickens. Agnazoli did not testify.

fied fingerprints were not McKnight's. In the back bedroom there were a set of scales that smelled of methamphetamine and two more jars, one of which held methamphetamine-containing liquid.[2]

At trial, the government proved, over defense objection, that McKnight, who did not testify, had been convicted in 1988 of delivery of methamphetamine. It was also stipulated that McKnight had a previous conviction for robbery and a previous conviction for burglary.

At trial, the defense theory of the case was that all of the firearms belonged to either McKnight's mother or Agnazoli and that McKnight was entirely unaware of the methamphetamine, which also belonged to Agnazoli. Pursuant to that defense, defense counsel offered alternative jury instructions on "mere presence," and "mere presence" plus "willful ignorance." After initially indicating he would grant McKnight's request to include a "mere presence" instruction, the trial judge later denied the request.

After the jury found McKnight guilty as charged, the district court sentenced him to 210 months' imprisonment on the first count and 60 months' imprisonment on the second count to be served consecutively. The district court also imposed two three-year terms of supervised release (to be served concurrently) and a one hundred dollar special assessment. McKnight filed a timely notice of appeal.

**Discussion**

McKnight appeals his conviction and sentence asserting four claims: (i) the evidence was insufficient to sustain his conviction; (ii) the trial court erred in refusing to include in its charge to the jury a "mere presence" instruction; (iii) the search warrant executed at McKnight's house was not supported by probable cause and the district court thus erred in denying McKnight's motion to suppress; and (iv) the district court erred in sentencing McKnight by refusing to depart downward from the Sentencing Guidelines range applicable to him.

1. Sufficiency of the Evidence

In challenging the sufficiency of the evidence, McKnight maintains that the government failed to prove that he knowingly possessed either the firearms or the methamphetamine. He argues that as a matter of law his ownership and occupancy of the house is not sufficient to establish knowing possession.

█ Possession of contraband may be either actual or constructive. *United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir.1984). In general, a person has constructive possession if he knowingly has ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located. *Id.* Constructive possession need not be exclusive, it may be joint with others, and it may be proven with circumstantial evidence. *Id.*[3] However, more evidence than mere physical proximity of the defendant to the controlled substance is required. *Id.* at 1019–20. McKnight relies on the Ninth Circuit case of *United States v. Reese*, 775 F.2d 1066 (9th Cir.1985), to support his claim that mere ownership of, and presence in, a living space inhabited by more than one person is insufficient, as a matter of law, to establish constructive possession. The

---

**2.** The methamphetamine content of the jars found in the house varied between 0.32 and 2.34 percent.

**3.** In reviewing a sufficiency of the evidence claim, this Court views the evidence in the light most favorable to the government and with all reasonable inferences and credibility choices made in support of the jury's verdict. *United States v. Kim*, 884 F.2d 189, 192 (5th Cir.1989). The Court inquires whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

*Reese* court stated: "Where, as here, a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support a conviction based on constructive possession against any of the occupants." *Id.* at 1073 (citing *Delgado v. United States,* 327 F.2d 641 (9th Cir.1964)). *See also United States v. DiNovo,* 523 F.2d 197 (7th Cir.), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975) (evidence that defendant lived with another in house in which contraband was found insufficient to sustain constructive possession conviction); *United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973) (possession of residence is insufficient in itself to establish possession of all contents therein).

Unlike the Ninth Circuit, however, this Court has not adopted a general, fixed rule of law regarding ownership of and presence in a residence in which contraband is found as a basis for permitting, or not permitting, a finding of constructive possession. In fact, this Court has stated that it prefers a "commonsense, fact-specific approach" to the constructive possession problem. *United States v. Smith,* 930 F.2d 1081, 1086 (5th Cir.1991) (declining to endorse the Texas Court of Criminal Appeals' "affirmative link" rule). This statement is in accord with the settled rule in this Circuit that "we examine the merits of each constructive possession case independently; previous cases serve as illustration only." *United States v. Onick,* 889 F.2d 1425, 1429 (5th Cir.1989) (citing *Bujol v. Cain,* 713 F.2d 112, 115 (5th Cir.1983), *cert. denied,* 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187 (1984)).

▮ In this case, five of the guns were strewn about the house in plain view. It is easy to conclude that even if none of the weapons belonged to McKnight, he had immediate access to them. A loaded handgun was found in a dresser used by McKnight and his mother that his mother testified she had never seen before.[4] Though according to the testimony of McKnight's mother all the firearms except one belonged to Agnazoli (she herself owned the .410 gauge shotgun), at the time the warrant was executed, McKnight was present in the house and Agnazoli was not anywhere on the premises. Thus, it was reasonable for a jury to infer that McKnight exercised dominion, and constructive possession over, the guns in his house, at the very least the handgun.

Further, the jars of methamphetamine liquid took up a large portion of the freezer compartment of the house's sole refrigerator. Uncontroverted evidence introduced at trial showed that it was impossible to open the freezer compartment (which was the top part of the refrigerator-freezer unit and had a separate door) and not notice the liquid-filled jars. The freezer-refrigerator unit was located at one end of the room (a converted living room) in which McKnight and his mother slept and their dresser was located. To reach the freezer-refrigerator unit from the back bedroom allegedly occupied by Agnazoli, one had to traverse a significant portion of the room in which McKnight and his mother slept, first going by one of the two beds there and the dresser where the handgun was. The scales, though in the back bedroom, were in plain view and smelled of methamphetamine. The prosecution clearly established McKnight's familiarity with methamphetamine. In such a small house it seems incredible that McKnight did not know of the methamphetamine's presence, as defense counsel argued at trial. The presence of McKnight's pit bulls is also slightly corroborative of *guarding a drug operation,* as is the presence and accessibility of the many loaded guns. All this evidence taken together, when coupled with McKnight's ownership of, residence at, and presence in

---

**4.** The gun was found in the top drawer of the dresser, in which McKnight's mother testified that bed linens were kept. McKnight's and his mother's personal items were kept in other drawers of the dresser.

the house, adequately supports a jury finding that McKnight knowingly possessed the methamphetamine there.

## 2. The Court's Refusal to Give a "Mere Presence" Instruction

■ McKnight's next contention is that the district court erred in denying his request to include either of two jury instructions in the court's charge. The first was a "mere presence" jury instruction, stating that mere presence at the scene of a crime is not sufficient by itself to establish that the defendant committed the crime. Alternatively, McKnight offered another jury instruction which addressed "mere presence" like the first but added two paragraphs discussing deliberate ignorance. After preliminarily indicating it would grant McKnight's request to include a "mere presence" instruction, the court ultimately declined to do so, being swayed by the government's argument that McKnight could not have been "merely present" because he was the owner of the house in which the contraband was found.

McKnight relies on *United States v. Cordova–Larios*, 907 F.2d 40 (5th Cir.1990), in which this Court reversed a conviction because the trial court did not give a "mere presence" instruction requested by the defendant. The *Cordova–Larios* panel stated the recognized rule that: "A defendant is entitled to have the jury instructed on a theory of the defense for which there is any foundation in the evidence." *Id.* at 42 (citing *United States v. Kim*, 884 F.2d 189, 193 (5th Cir.1989)). However, it is similarly settled that this Court will reverse a district court's refusal to give a requested jury instruction only if the refused instruction:

"(1) was substantially correct; (2) was not substantially covered in the charge delivered to the jury; and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense."

5. By contrast, the defendant in *Cordova–Larios* did not own the truck in which contraband was found and he was merely a passenger therein. Though the truck was owned by the defendant's

*United States v. Duncan*, 919 F.2d 981, 990 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991); *United States v. Burroughs*, 876 F.2d 366, 369 (5th Cir.1989); *United States v. Mollier*, 853 F.2d 1169, 1174 (5th Cir.1988).

McKnight's claim fails because this case, unlike *Cordova–Larios*, is, by its undisputed facts, not a "*mere* presence" case.[5] The dominion and control associated with owning *and* living in a small, open house like McKnight's—matters established by the defense testimony as well as that of the prosecution and not contrary to the defense's factual theory of the case—is utterly inconsistent with the legal conclusion that McKnight was "*merely* present" in a house full of guns and drugs in its common areas (and a gun in the dresser used by McKnight). While it may, under appropriate circumstances, be possible for an owner to qualify for a "mere presence" instruction with regard to the property owned, there is no need to here hypothesize under what set or sets of facts such an instruction may be justified. It is clearly not so justified on the undisputed facts of this case.

The constructive possession instruction that was given by the court, on the other hand, we find to be wholly adequate and appropriate here. The court's charge defined possession as follows:

"Possession, as that term is used in this case, may be of two kinds, actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

"A person who, although not in actual possession, knowingly has both the power and intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

"Possession may be sole or joint. If one person alone has actual or constructive brother-in-law, his brother-in-law had lent the truck to the driver, not the defendant. *Cordova–Larios, supra*, 907 F.2d at 41.

tive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

"You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession either alone or jointly with others."

McKnight's claim of error also fails to satisfy the second prong of the test articulated in *Duncan* because the defense theory of the case was not only adequately, but *better* addressed by the constructive possession instruction given by the court. Such a constructive possession instruction has withstood challenge in this Court before. *See United States v. Erwin,* 602 F.2d 1183, 1185 (5th Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); *United States v. Rojas,* 537 F.2d 216, 219–220 & n. 2 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

In *Rojas,* this Court upheld the denial of a "mere presence" instruction on the ground that the district court's constructive possession instruction (which was practically identical to that given in this case) effectively precluded conviction for mere presence or proximity. We indicated in *Rojas* that the constructive possession requirement that the defendant have an intent to exercise dominion or control over the contraband obviates the need for a separate "mere presence" instruction. *Id.* at 220. *Accord United States v. Durades,* 929 F.2d 1160, 1167–68 (7th Cir.1991); *United States v. Johnson,* 857 F.2d 500, 501–02 & n. 2 (8th Cir.1988); *United States v. Montgomery,* 819 F.2d 847, 851–52 (8th Cir.1987).

This case is closer to *Rojas* than to *Cordova–Larios.* The panel in *Cordova–Larios* never mentioned what instructions were given or whether they sufficed to eliminate the need for a "mere presence" instruction. We must assume that the trial court in that case did not deliver instructions adequate to preclude a conviction for mere presence

or proximity. There is no conflict, therefore, between the holdings of *Cordova–Larios* and *Rojas.*

Finally, we recognize that sometimes it may be the better practice for the trial court to grant the defense its requested instruction even if the court feels that the issues are adequately covered by other, included instructions. In situations where the defendant's requested instruction will more specifically and directly explicate the defendant's theory of the case than a more general instruction offered by the court, inclusion of the defense tendered instruction may well be appropriate for this reason. Such, however, is not the case here. Because of the logical inconsistency of McKnight being *"merely* present" in the small, open home which he owned and lived in, the *"mere* presence" instruction requested by the defense, even coupled with the "willful ignorance" instruction, would have tended more to confuse or mislead then to enlighten the jury.

**3. The Validity of the Search Warrant**

■ Much of the case against McKnight was based on evidence found at McKnight's house pursuant to the execution of the search warrant which was premised on the affidavit of Chief Deputy Gaines that included the following:

"C.R. Gaines, is Chief Deputy for the Waller County Sheriff's Department and a licensed peace officer of the State of Texas. Affiant has received information from Raymond Cooke, Waller County Constable of Precinct 1 and a licensed peace officer for the State of Texas who told the affiant he had received information from a Confidential Informant that he knows to be reliable and has furnished him information in the past that has proved to be reliable and true. The Confidential Informant advised that he has been in the residence of Gerald F. McKnight, the above described residence, during the past 72 hours and that there had been a chemical process going on known as a "Cook" for the purpose of manufacturing a controlled substance known to the CI to be methamphetamine.

The informant has given information on methamphetamine cooks and chemicals before and is familiar with the chemicals and processes used to manufacture methamphetamine.

"The CI further stated that the substance had been thru the final stage of manufacturing and had been "powdered out" into crystal methamphetamine. The CI further stated that the substance known to him to be methamphetamine was now hidden in an out building on the property. The above affiant, based on twenty three years of law enforcement experience and the information received from the confidential informant, does believe that methamphetamine is located in . the above described location."

McKnight contends that this is a "bare bones" affidavit of the kind that was found to be insufficient to establish probable cause for the issuance of a warrant in *United States v. Barrington*, 806 F.2d 529 (5th Cir.1986), and *United States v. Kolodziej*, 712 F.2d 975 (5th Cir.1983). However, as the government points out, this Court in *Christian v. McKaskle*, 731 F.2d 1196 (5th Cir.1984), and *United States v. Hall*, 545 F.2d 1008 (5th Cir.1977), upheld probable cause determinations based on affidavits nearly identical in content to this one.

The affidavit in this case sets forth details regarding the informant's presence at McKnight's house and his observations therein by which a magistrate could judge whether the informant had a sufficient basis of knowledge of the operations supposedly being conducted at McKnight's house. *See United States v. Jackson*, 818 F.2d 345, 349 (5th Cir.1987). The Constable's assertion that the confidential informant was "reliable" and had "furnished him with information in the past that has proved to be reliable and true" provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip. *Id.* at 348. Therefore, considering the deference this Court owes the magistrate's determination under substantial basis review, *United States v. Wylie*, 919 F.2d 969, 974 (5th Cir.1990), and construing the affidavit

in a common sense manner, *Jackson, supra*, 818 F.2d at 349, probable cause is at the very least most likely supplied by this affidavit.

We need not conclusively decide, however, whether the affidavit here establishes probable cause or not, because the affidavit and resulting warrant clearly qualify for the good-faith exception to the probable cause requirement established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1985). *See United States v. Craig*, 861 F.2d 818, 821 (5th Cir.1988). In this case, even assuming that probable cause to issue the warrant may be open to some question, the warrant's facial validity under *Leon* is not.

The *Leon* Court noted four situations that were to be excluded from application of the good-faith exception. Citing one of these exclusions, McKnight claims that the warrant was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon, supra*, 104 S.Ct. at 3421 (quoting *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975)). We review the reasonableness of an officer's reliance *de novo*. *Wylie, supra*, 919 F.2d at 974. Where, as here, existence of probable cause itself was at least likely established by the affidavit, it is impossible to argue that the warrant was facially invalid and that an officer's reliance on it could be unreasonable. We therefore affirm the district court's decision to admit the evidence found in the search of McKnight's house.

### 4. McKnight's Sentence

■ McKnight's final points of error regard his sentence of 210 months' imprisonment for being a convicted felon in possession of firearms. He was sentenced under the provision of the United States Sentencing Guidelines applicable at the time, U.S.S.G. § 2K2.1(c)(2), which stated that for such a firearm conviction, if the firearms were used in the commission of another offense (in this case possession of more than 1000 grams of a methamphet-

amine-containing substance with intent to distribute), then the offense level shall be that set by the Guidelines for the underlying offense.

McKnight's first claim is that the evidence was insufficient to establish his guilt on the charge of possession of methamphetamine, and that therefore the district court erred in using the offense level set for that crime. This is the same sufficiency of the evidence claim discussed and rejected above.

Secondly, McKnight requested the district court to depart downward in recognition of (i) the mandatory minimum sixty-month sentence that he would receive as a result of the methamphetamine possession charge and (ii) the very low purity of the mixtures containing methamphetamine which he claimed had the effect of artificially inflating the applicable guideline range. The district court refused to depart, but sentenced McKnight at the low end of the guideline range.

As McKnight acknowledges in his appellant's brief, "[t]his court will not review a district court's refusal to depart from the Guidelines, unless the refusal was in violation of the law." *United States v. Hatchett*, 923 F.2d 369, 372 (5th Cir.1991); *United States v. Buenrostro*, 868 F.2d 135 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). This Court has recently declined to decide whether such a "violation of the law" is established where a district court refuses to depart because it erroneously believes that departure is prohibited by law. *United States v. Miller*, 903 F.2d 341, 349 n. 10 (5th Cir.1990) (also citing cases in other circuits that have ruled both ways on this issue).

Nor need we decide that issue in this case, because there is no sufficient indication that the district court believed itself to be constrained by law. In discussing its decision not to depart from the guidelines range, the district judge stated that:

> "I don't think this is a case that warrants a downward departure because of the mixture. The statute clearly says any mixture or substance containing a

detectable amount of a controlled substance, this is the case, so I'm not going to downward depart....

> "So I really think—I agree with you, you know, we have someone who deserves to be punished because he is a felon in possession of firearm, but I don't think we need to just completely go wild, so I'm going to overrule your objections also.

> "And I'm not going to depart upward, and I'm not going to depart downward, I'm going to stay within the Guidelines."

These comments suggest that the district judge chose not to depart from the Sentencing Guidelines because he did not think the circumstances warranted a departure, rather than because he believed his hands were tied by the law. Therefore, the factual predicate of McKnight's claim, that the judge erroneously believed that the law prohibited a departure from the guideline range, is not established by the record.

No error has been demonstrated in the district court's sentencing of McKnight.

### Conclusion

McKnight has demonstrated no reversible error in his trial or sentencing. His conviction and sentence are, therefore,

**AFFIRMED.**