United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2007

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the F ifth Circuit

---

m 06-50138

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALEX GALLEGOS,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas
m 5:04-CR-81-1

---

Before SMITH, BENAVIDES, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

A jury found Alex Gallegos guilty of five

different drug and weapon offenses. Gallegos appeals his conviction, arguing that the district court erred in denying his motion to suppress, that the court erred in denying disclosure of a confidential informant's identity, and that the evidence is insufficient to support his conviction. We affirm.

I.

Detective David Berrigan of the San Antonio Police Department received information from a confidential informant that a man

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

named Roland was selling drugs in the front yard of a house. Through a computer search, Berrigan determined that the Gallegos family lived at the house and that the license plate numbers on the vehicles outside the house were registered to members of the Gallegos family. He took no further action to corroborate the information the informant provided.

Based on this information, Berrigan prepared an affidavit to support a search warrant. The affidavit stated the address of the house and a description of a Hispanic male, known only as Roland, who was approximately 35 to 40 years old, 180 to 200 pounds, 5' 8" to 5' 10", and clean shaven. He had short brown hair and tattoos on both arms. The affidavit noted that this man controlled the house and had possessed cocaine there in the past 48 hours. Finally, it recounted that a confidential informant, who had previously provided accurate information, had provided this information to the police.

A magistrate issued a warrant. As police were driving up to the house to execute it, they saw two men in the front yard exchanging drugs. The police approached the men, one of them threw the bag being exchanged into the air, and Gallegos fled. Police caught both men, did a security sweep, and searched the property.

Gallegos was indicted for and convicted of (1) conspiring to distribute and possess cocaine within 1,000 feet of a secondary school in violation of 21 U.S.C. §§ 846, 860(a), and 841(a)(1) and (b)(1)(B); (2) aiding and abetting in the possession with intent to distribute cocaine within 1,000 feet of a secondary school in violation of 21 U.S.C. §§ 860(a) and 841(a)(1) and(b)(1)(B) and 18 U.S.C. § 2; (3) possessing with intent to distribute 100 grams or more of heroin within 1,000 feet of a secondary school in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 860(a); (4) using and carrying and possessing a firearm during and in relation to and in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i); and (5) using and carrying and possessing a firearm during and in relation and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(i).

Gallegos filed a motion to suppress and requested to discover the identity of the confidential informant. The district court denied the motion and the request.

At trial the government offered the following evidence: Officers observed Gallegos conducting a drug transaction. In their search of the property, officers found a plastic bag containing heroin and cocaine in the back of the property; $14,000 in a tub; $3,000, packaged in $100 increments and tied in $1,000 bundles in a safe for which Gallegos had a key; $7,000 in a dresser drawer that contained some of Gallegos's personal items; evidence of a drug ledger; a sandwich bag containing baggies filled with heroin and cocaine; a large bag of cocaine between the rafters and wall of a shed; two bottles of lactose, one of which had Gallegos's fingerprint on it; a digital scale; and other packaging material. When confronted with the cocaine, Gallegos looked to the rafters where the police had found it, even though the police had not told him they had found it there. Gallegos said he would take the rap for the cocaine. A map with a legend on it and a computer program that analyzes locations showed the house was within 1,000 feet of the school.

To prove the firearm offense, the government stated that police found two sawed-off

2

shotguns, a semiautomatic handgun, a revolver, an automatic assault handgun, and a rifle. The weapons were found close to the drugs, one was loaded, two were illegal by themselves, and all were illegal for Gallegos because he is a convicted felon.

## II.

Gallegos urges that the court erred in denying his motion to suppress. We review the court's factual findings in a denial of a motion to suppress for clear error and its legal conclusions *de novo*. *United States v. Solis*, 299 F.3d 420, 435 (5th Cir. 2002). We review *de novo* whether an officer's reliance on a warrant was objectively reasonable and accordingly in good faith. *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

## A.

Gallegos contends that the search warrant was not supported by probable cause. "'Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of evidence under the good-faith exception [to the exclusionary rule] will resolve the matter.'"[1] We proceed directly to the probable cause inquiry only where "the resolution of a 'novel question of law . . . is necessary to guide future action by law enforcement officers and magistrates.'" *Craig*, 861 F.2d at 820-21 (quoting *Illinois v. Gates*,

---

[1] *United States v. Flanders*, 468 F.3d 269, 270 (5th Cir. 2006) (quoting *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988)). The good faith exception applies if an officer's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable"; a court need not suppress the fruits of a search if this exception applies. *United States v. Leon*, 468 U.S. 897, 922 (1984).

462 U.S. 213, 264 (1983) (White, J., concurring)). Here, we only need to apply established Fourth Amendment principles to this set of facts, so we determine whether the good faith exception to the exclusionary rule applies.

Gallegos posits that the good faith exception does not apply, because the warrant was supported by only a bare bones affidavit. We disagree. To avoid being a bare bones affidavit, the affidavit must provide "the magistrate with facts, and not mere conclusions, from which he could determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

To assess the value of a confidential informant's report, we consider his veracity, reliability, and basis of knowledge. *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006). Reliability and veracity are established by information indicating the informant has given previous reliable information. *Mack*, 461 F.3d at 551; *Christian v. McKaskle*, 731 F.2d 1196, 1200 (5th Cir. 1984). Direct personal observation is a sufficient basis of knowledge. *Mack*, 461 F.3d at 551; *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006).

Here the informant's report is valuable because the affidavit establishes the informant's veracity, reliability, and basis of knowledge. The affidavit shows the informant's veracity and reliability by stating that the informant "has on previous occasions given affiant information regarding the trafficking and possession of a controlled substance which has proven to be true and correct . . . ." The affidavit also reflects the basis of the knowledge: The informant saw the unlawful possession of cocaine within forty-eight hours of the affidavit.

The information in this affidavit is similar to the information in the affidavit in *United States v. McKnight*, 953 F.2d 898 (5th Cir. 1992). There the affidavit said (1) that the informant had furnished the officer information in the past and had proven reliable and true and (2) that the informant had seen methamphetamine at a specific house in the past seventy-two hours. *Id.* at 904-05. We held that "[t]he Constable's assertion that the confidential informant was 'reliable' and had 'furnished him with information in the past that has proved to be reliable and true' provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip." *Id.* at 905. Also, the informant's personal observations were a sufficient basis of knowledge. *Id.* Because these facts alone made probable cause "at the very least most likely supplied by this affidavit," the affidavit was not bare bones. *Id.*

The instant affidavit is virtually identicalSS *McKnight*'s includes more information about how the drugs were processed at the residence, but these facts do not bear on the veracity or reliability of the informant or the basis of his knowledge. Just as *McKnight*'s affidavit was not a bare bones affidavit, neither is the one in this case. The good faith exception applies, and the district court correctly denied the motion to suppress.

## B.

Gallegos argues that the government cannot use the good faith exception, because Berrigan misled the magistrate in two ways. First, Berrigan discovered that the Gallegos, not "Roland," controlled the residence, but he still told the magistrate only about Roland's controlling the residence, omitting any mention of the Gallegos family. Second, Berrigan told the magistrate that drugs were dealt "at" the

residence and not outside it as the informant had indicated.

We will not uphold an officer's good faith reliance on a warrant if "the issuing-judge 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . .'" *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). "'In evaluating this argument, we apply the standard from *Franks v. Delaware*, 438 U.S. 154 (1978), which requires a defendant to show that '(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause.'" *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (quoting *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002)), *cert. denied*, 127 S. Ct. 1313 (2007).

The district court found Berrigan did not mislead the magistrate, and we review this fact finding for clear error. Gallegos has the burden of "establishing by a preponderance of the evidence that the misrepresentation was made intentionally or with reckless disregard for the truth." *United States v. Alvarez*, 127 F.3d 372, 373 (5th Cir. 1997); *United States v. Wake*, 948 F.2d 1422, 1428-29 (5th Cir. 1991).

Two decisions from this court demonstrate the sort of evidence that meets this burden to prove that an officer acted intentionally or with reckless disregard for the truth. *See Alvarez*, 127 F.3d at 375; *United States v. Namer*, 680 F.2d 1088, 1094 (5th Cir. 1982). In concluding that an officer recklessly disregarded the truth in *Alvarez*, we went through a laundry

4

list of reasons the officer in that case was reckless:

> The lack of exigency, [police officer] Rivera's level of training and experience, his failure to consult with an attorney, his failure to disclose in the affidavit the facts underlying his conclusory statements, coupled with Rodriguez's statement that Alvarez claimed to have other similar tapes (there was no testimony that the other tapes were more explicit), and the fact that Rivera's only justification for proceeding with the warrant application was his testimony that he believed breasts were genitals, lead us to conclude that Rivera acted in reckless disregard for the truth.

*Alvarez,* 127 F.3d at 375. In *Namer*, a similar list of factors compelled our conclusion that law enforcement recklessly disregarded the truth: Attorneys drafted the affidavit, they had experience with this type of case, no exigency or haste preceded the affidavit, and the attorneys understood the importance of being accurate. *Namer*, 680 F.2d at 1094.

Gallegos does not present this sort of evidence of intent or recklessness. He alleges that Berrigan's statements were the product of intentional or reckless conduct, but other than his argument that the statements were false, Gallegos offers no proof that Berrigan intended his statements to be false or acted in reckless disregarded for the truth. Even if, *arguendo*, the district court incorrectly held the statements were true, Gallegos still cannot prevail, because he did not prove Berrigan possessed the required mental state.

## C.

Gallegos claims the good faith exception is inapplicable because the affidavit failed to establish a nexus between the residence and the drugs. For an officer's conduct to qualify under the good faith exception, "[t]he affidavit must establish a nexus between the house to be searched and the evidence sought. *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). That nexus may be established, however, by direct observation or through normal inferences as to where the articles sought would be located. *See id.*; *United States v. Pace*, 955 F.2d 270, 277 (5th Cir. 1992)." *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996).

When compared to defendants' assertions in our previous cases dealing with the nexus requirement, Gallegos's claim that this affidavit presented an insufficient nexus fails. In one case, an affidavit established a nexus between a residence and drugs because the affidavit suggested the defendant's salvage business was not confined to his place of business, because it stated that a drug maker had previously gone to the rear of the residence, and because it indicated the defendant's place of business and residence were contiguous and controlled by the same people. *United States v. Anderson*, 853 F.2d 313, 316 (5th Cir. 1988). In *Broussard*, the affidavit established a nexus between the defendant and his residence because it stated that drugs were placed in a car that was later parked in the residence's driveway and that the defendant picked up a bag believed to contain drugs and took the bag inside his residence. *Broussard*, 80 F.3d at 1035.

In contrast, cases holding that the nexus to a residence was insufficiently established involve crimes that occur away from the home. For instance, in *United States v. Freeman*, 685 F.2d 942, 950-51 (5th Cir. 1982), police found evidence of drug smuggling at an airport, but

5

no suspicious activity had taken place at the drug smuggler's home, so there was not a sufficient nexus to search the home.

In the present case, the affidavit stated Roland possessed drugs at the residence. This statement is evidence of a nexus between the narcotics and the residence, and it even more directly connects the illicit items to the house than did the evidence in *Anderson* and *Broussard*. This case is unlike *Freeman*, because here the crime and suspicious activity occurred at, not away from, the residence. Because the information in this affidavit is like the information in affidavits that we have held established a nexus, Gallegos's argument that no nexus existed lacks merit.

### D.
Gallegos contends the district court erred by denying his motion to suppress, because the warrant was void for staleness. Stale information in an affidavit cannot support probable cause. "The proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time." *United States v. McKeaver*, 5 F.3d 863, 866 (5th Cir. 1993). Even if stale information cannot support probable cause, however, officers may be able to execute a warrant in good faith. "To prevail on his fourth amendment claim, [Gallegos] must establish that the facts alleged in the affidavit were so dated that no reasonable officer could have believed that the affidavit established probable cause . . . ." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997).

Information that someone possessed drugs forty-eight hours earlier is stale, Gallegos posits, because drugs are quickly consumed. But, this fact does not entail the conclusion that the information was so dated that no reasonable

officer could have believed that the affidavit established probable cause.[2]

### III.
Gallegos claims the district court should have ordered the government to disclose the confidential informant's identity.

This Court reviews the district court's grant or denial of disclosure of an informant for abuse of discretion. *United States v. Wilson*, 77 F.3d 105, 111 (5th Cir. 1996). The district court weighs three factors to determine whether to grant or deny disclosure of an informant's identity: '(1) the level of involvement in the alleged criminal activity, (2) the helpfulness of disclosure to any asserted defense, and (3) the government's interest in non-disclosure.' *Id.*

*United States v. Thomas*, 348 F.3d 78, 85 (5th Cir. 2003).

Gallegos makes no arguments about the informant's level of involvement in the criminal activity or the government's interest in non-disclosure. Instead, he relies entirely on the prejudice to his defense. He asserts that the confidential informant should have been called to testify that the informant saw "Roland"SSnot GallegosSSdealing drugs. This testimony could have led the jury to doubt whether Gallegos was dealing drugs at the residence.

---

[2] *See United States v. Leaster*, 35 Fed. Appx. 402, 410-12 (6th Cir. 2002) (noting that it is difficult to determine whether 48-hour-old information about drug possession is stale but that because of this uncertainty, officers are entitled to rely on the warrant under the good faith exception because the information is not so stale as to render the officer's belief unreasonable).

"Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *United States v. Cooper*, 949 F.2d 737, 749 (5th Cir. 1991). The factors that Gallegos does not discuss favor the district court's decision: The informant was not involved in the crime, favoring non-disclosure, *Cooper*, 949 F.2d at 749, and the government has an interest in getting future tips from the informant. Gallegos has not demonstrated significant prejudice to his defense; the fact that someone other than he was dealing drugs at the same house does not negate the possibility that he was also doing so there. Whatever prejudice he may have suffered is outweighed by the other factors the district court addressed. The court did not abuse its discretion.

IV.

Gallegos argues that the evidence is insufficient to support the verdict. "We review the sufficiency of the evidence by examining all the evidence in the light most favorable to the verdict. *See United States v. Thomas*, 120 F.3d 564, 569 (5th Cir. 1997). We will affirm if the evidence is such that a rational trier of fact could have found the requisite elements of the offense beyond a reasonable doubt. *Id.*" *United States v. Guerrero*, 234 F.3d 259, 261-62 (5th Cir. 2000).

A.

Gallegos avers that the evidence was not sufficient for the jury to find that he possessed drugs with intent to distribute, that he aided and abetted possession with the intent to distribute, or that he conspired to possess with intent to distribute narcotics. "The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) knowledge, 2) possession, and 3) intent to distribute the controlled substances." *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001). To prove aiding and abetting, "the government must establish that the defendant became associated with, participated in, and in some way acted to further the possession and distribution of the drugs. To aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission." *Id.* (internal quotations and citations omitted). Finally, "[t]o prove a drug conspiracy under 21 U.S.C. § 846, the government must prove (1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Reveles*, 190 F.3d 678, 691 n.1 (5th Cir. 1999).

The police found vast quantities of drugs, money, and narcotic distribution devices, all linked to Gallegos, providing evidence that he possessed drugs intending to distribute them. Conspiracy and aiding and abetting were demonstrated by testimony that officers directly witnessed Gallegos in a drug transaction. Gallegos's suggestion that these facts are equally consistent with a conclusion that he merely shared the drugs does not change the result, given the deferential standard we use to review jury findings.

B.

Gallegos maintains the evidence is insufficient to establish that he carried a firearm during and in relation to a drug trafficking crime or possessed a firearm in furtherance of a drug trafficking crime as required under 18 U.S.C. § 924(c). Yet, this case is similar to *United States v. Molinar-Apodaca*, 889 F.2d

1417, 1424 (5th Cir. 1989), in which we held that evidence that two guns were near drugs at a home was sufficient to permit an inference that the guns were being used for the purpose of protection in a drug trafficking offense. In *Molinar-Apodaca*, two firearms were seized on a property that also housed drugs. *Id.* at 1422. We held that the presence "of an Uzi rifle, a high powered handgun, and several rounds of ammunition [in the defendant's house] at the time when a considerable quantity of marijuana was seized on the premises" was sufficient "to show that the firearm was available to provide protection" and thus was used "in relation to" a drug crime. *Id.* at 1424. The evidence in our case is like that in *Molinar-Apodaca* and is sufficient for a jury to find that Gallegos violated § 924(c).

AFFIRMED.